BOARD OF COMMISSIONERS OF VANDERBURGH COUNTY
*v.* SANDERS

[No. 27,385. Filed December 31, 1940.]

*Henry C. Buente* and *Paul H. Schmidt,* both of Evansville, for appellant.

*Elmer Q. Lockyear, Theodore Lockyear* and *James G. Crenshaw,* all of Evansville, for appellee.

Roll, J.—This is an action by appellee, for himself and on behalf of all others similarly situated, and those having a common or general interest in this matter, against appellant for the recovery of building, erection, construction, and repair permit and inspection fees, alleged to have been paid by appellee and others, unnamed, by virtue of the provisions of an ordinance passed by appellant under the provisions of § 26-2301 et seq., Burns' 1933 (Supp.), § 5205-1 et seq., Baldwin's Supp. 1935, Acts 1935, ch. 239, p. 1239. The several payments were paid by appellee and others, unnamed, to the Department of Buildings of Vanderburgh County Planning Commission, which, appellee alleged, had no authority to collect. The fees so collected were deposited in the general fund of said County. Appellee questions the validity of the ordinance enacted by appellant requiring the payment of fees. Appellant answered the complaint by a general denial. The cause was tried by the court without the intervention of a jury.

There was a finding and judgment in favor of appellee in the sum of $11.70. In addition, the court ordered appellant, within 10 days, to furnish the clerk of said court a true and correct list "of the names of the persons, firms and corporations who had applied for a permit or license for the construction, alteration, or improvement of buildings within Vanderburgh County outside the corporate limits of the City of Evansville," and opposite each name the amount so paid by each. The clerk was ordered to enter said list of records as a part of the judgment of the court in this cause. Such a list was filed with the clerk, and afterwards the court rendered judgment against appellant and in favor of

each of said persons for the amount shown by said list so filed. The list filed with the clerk contained the names of 3,922 persons, firms, and corporations which had paid fees required by the ordinance. The amount of the fees varied in amounts, ranging from $.50 to $12.00. The total amount of fees paid was $9,956.07.

Appellant filed its motion for a new trial, which was overruled by the court. On appeal the only error assigned is the overruling of its motion for a new trial.

One of the questions presented by the motion for a new trial is whether a valid judgment could be rendered in favor of the unnamed plaintiffs, and whether or not the appellee had such a general or common interest in the subject-matter with the other parties for whose benefit the action was prosecuted as will permit the appellee to prosecute this action in his representative capacity. We are of the opinion that this question must be answered in the affirmative.

Section 2-220, Burns' 1933, § 35, Baldwin's 1934, provides:

". . . when the question is one of a common or general interest of many persons, or where the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole."

It has been held by this court that this statute announces an equitable rule, and is applicable to actions in law as well as in equity. *Tate* v. *Ohio, etc., Railroad Co.* (1858), 10 Ind. 174; *Colt* v. *Hicks* (1932), 97 Ind. App. 177, 179 N. E. 335. In *Gaiser* v. *Buck* (1931), 203 Ind. 9, 179 N. E. 1, it was held that one or more creditors may maintain an action against the stockholders in a bank to enforce double liability for the benefit of all the parties, where the

creditors are numerous and it is not practical to bring all of them before the court. In *Shoemaker, Auditor* v. *Board of Commissioners* (1871), 36 Ind. 175, the board of commissioners and one, John Brownlee, sought to recover alleged illegal and unlawful taxes levied and collected against real and personal property located in Grant County. The action was brought by the plaintiffs for and on behalf of all the taxpayers. The question was raised as to whether or not the plaintiffs had such a general and common interest with all of the other taxpayers of said county as would come within the provisions of the statute and would permit them to sue in a representative capacity. While it was held in that case that the plaintiff could not maintain the action for reasons stated in the opinion, yet the court made the following observation:

> "If it had been alleged and shown that he (Brownlee) owned taxable real estate, and had paid his taxes for 1869, and that he had a common and general interest with many persons, or that the parties were numerous and that it was impracticable to bring them all before the court, then he might have maintained an action for himself, and for the benefit of the whole, in a cause where the facts entitled them to relief."

The record in this case shows that 3,922 parties were interested in this action. It would be most impracticable to say that all of them must join as plaintiffs or that each must institute a separate action. It is clear that plaintiff's interest is general and common with the interest of the other parties, and comes clearly within the provisions of the above-mentioned statute.

It is contended that this appeal should be dismissed for the reason that all parties to the judgment were not named in the assignment of error. The plaintiff,

Ora Sanders, was the only party named as appellee in the assignment of error. See rule 7, of the Supreme and Appellate Courts, § 2-3212 and § 2-3213, Burns' 1933, § 476 and § 477, Badwin's 1934.

By the provisions of § 2-220, Burns' 1933, § 35, Baldwin's 1934, *supra* it is provided that in a class action, "one or more persons may sue or defend for the benefit of the whole." If by the terms of the statute one or more may sue or defend for the benefit of the whole in the trial court, likewise such person or persons may prosecute or defend the action on appeal. The statute must be construed as permitting one or more who begin the action for the benefit of the whole, or who defend for the benefit of the whole, as authorizing such person or persons to so prosecute or defend throughout all the stages of such action including an appeal to this court. So it seems to us that under the statute appellee, Ora Sanders, as representative of the class for whose benefit this action was instituted, is the only necessary party to be named as appellee on appeal.

We therefore conclude that the appeal should not be dismissed.

In June 1935, the Board of Commissioners of Vanderburgh County appointed a county planning commission under the provisions of § 26-2301, et seq., Burns' 1933 (Supp.), § 5205-1, et seq., Baldwin's Supp. 1935, Acts 1935, ch. 239, p. 1239. After the personnel of said commission had been completed, and said commission duly organized, it submitted to the board of commissioners of said county the ordinance here in question for adoption. The record of the board of commissioners of November 25, 1935, shows the following entry:

"An Ordinance of building code for the county outside of city limits, prepared by County Planning Commission was read. The Commissioners refer said Ordinance to County Attorney, Henry Buente, with instructions to analyze same and report back to the Board of Commissioners on Monday, December 2nd, 1935."

On December 2, 1935, it was ordered that notice of a public hearing on the adoption of said ordinance be given by publication and posting of notices. Such notice was given and thereafter said ordinance was duly adopted.

Said ordinance is as follows:

"An Ordinance to Regulate the construction, repair, alteration, maintenance and equipment of buildings, in Vanderburgh County, as authorized by an Act passed by the Indiana General Assembly and approved March 12, 1935, entitled 'An Act concerning the preparation and adoption of plans for the physical and economical development of Counties.'

"Whereas, The City of Evansville has grown to such an extent that a majority of new structures will obviously be erected in that portion of Vanderburgh County, lying outside of the limits of the City of Evansville,

"Whereas, It is deemed necessary to direct the orderly development of the outlying residential districts in Vanderburgh County, to prevent the erection of unsightly shacks, to prevent fire hazards, to promote health and to protect and increase real estate values.

"Whereas, the building contractors, carpenters, masons, mechanics of the building trades and the general public have, in the ten years since its enactment, become familiar with and have been guided by the Evansville Building Code.

"Whereas, the Evansville Building Code has proved practical in its application and thorough in detail, and to save the tax-payers the expense of publishing so lengthy an ordinance.

"Therefore, Be It Ordained, By the County Commissioners of Vanderburgh County that the Evansville Building Code as passed by the Common Council of the City of Evansville, Indiana, March 3, 1924, and as since amended is hereby adopted in its entirety as an Ordinance of Vanderburgh County. This Ordinance shall apply only to and govern the erection of structures, buildings or houses on lots of recorded subdivisions and tracts of land of two acres or less, lying outside of the City Limits of Evansville.

"For the purpose of this Ordinance certain terms, titles, and words contained therein are herewith defined as follows:

"1. The 'Board of Appeals' shall be the Board of County Commissioners and the Auditor of Vandburgh County.

"2. The 'Board of Public Works' shall mean the Board of County Commissioners.

"3. The 'Department of Buildings' shall mean the Vanderburgh County Planning Commission.

"4. The 'City Comptroller' shall mean the Auditor of Vanderburgh County.

"5. The 'City Attorney' shall mean the attorney of the Vanderburgh County Planning Commission.

"7. The 'Inspector' or 'Field Inspector' shall mean a person duly appointed by the Vanderburgh County Planning Commission and approved by the Board of County Commissioners. Said Inspectors to be the City Inspector, and no additional compensation is to be paid them for such county inspections.

"The purpose of this Ordinance and the execution of the powers vested therein is to supplement in Vanderburgh County and not to duplicate the supervision of the City Department of Buildings within the City Limits of the City of Evansville.

"This Ordinance shall be in full force and effect from and after its adoption by the Board of County Commissioners of Vanderburgh County,

"Adopted by majority vote of the Board of Commissioners of Vanderburgh County, this 24th day of February, 1936."

The Evansville City Building Code as adopted, and as passed by the board of commissioners, consists of 53 separate and distinct titles and is very comprehensive in all its parts. The object and purpose of the building code as stated therein is as follows:

"An Ordinance providing for the maintenance of a department for jurisdiction over buildings; to authorize their construction, repair or remodeling, their occupancy and limiting their use; defining the fire limits and describing the character of buildings which may or may not be erected within these limits; prohibiting the erection of certain kinds or classes of buildings, their repair, or the removal of same without license therefor; to regulate the construction of buildings in said city, to authorize and require the inspection of buildings erected or in the process of erection; to provide for the condemnation of buildings under construction or old structures already erected; regulating the construction and maintenance of any modifying accessory of any building regardless of its kind or character; for supervision over and regulation of heating equipment, plumbing, electric installation, signs or sign-boards, fire escapes, water towers, tanks, chimneys and stacks; regulating the use, care and maintenance of buildings, their tenancy, occupancy, kind and character of goods stored therein; prohibiting the construction or maintenance within certain confines or limits of buildings whose occupancy would in any way endanger life or health; regulating the maintenance of all classes of public buildings and semi-public buildings, hotels, theatres, motion picture show houses and all other places of assemblage or amusement; providing for the appointment of a Commissioner of Buildings and such assistants as are required to carry on this work and repealing all ordinances in conflict herewith."

Appellee, during the year of 1937, applied for certain building permits and for certain inspections, for which he paid the Treasurer of Vanderburgh County the specified fees.

It is for these fees that appellee seeks to recover in this action.

Appellee says that the board of county commissioners have and can exercise the powers only as are expressly conferred on it by the constitution and the statutes of the state, or such powers as arise by necessary implication from those expressly granted, or such as are requisite to the performance of the duties which are imposed on it by law. We think the above is a fair statement of the law. We must, therefore, look to the statute under which appellant acted to determine whether authority to pass the ordinance in question can be found.

The title of the Act reads thus:

"AN ACT concerning the preparation and adoption of plans for the physical and economic development of counties, providing for the appointment of county planning commissions and prescribing their rights, powers and duties and the rights, powers and duties of counties and the officers thereof in connection therewith, and declaring an emergency."

Section one of the Act provides for the appointment of a county planning commission. The provisions of Section 2 are not material in this case.

In Section 3, the purpose of the county planning commission is set forth. The legislative purpose in creating the county planning commission is outlined in Section 3. One of the purposes of creating the county planning commission was to provide a more healthful, convenient, safe, and pleasant living condition in the county, and, in order to accomplish this end, they provided in Section 3 and 4, for the working out of a master plan. This master plan, for the development of the county, was contemplated to be a progressive piece of work. By Section 5, of the Act it is provided

that the master plan, as worked out and developed by the county planning commission, might be adopted as a whole, or might be adopted in part as the work of the plan developed. The Act provides for amending, extending, or adding to the plan from time to time.

Section 9 provides:

"The county planning commission shall advise and co-operate with municipal, county, regional and other local planning commissions within the state for the purpose of promoting co-ordination between the state and local plans and development. The commission may, upon request or on its own initiative, furnish advice or reports to any county, officer or department on any problem comprehended in the field of county planning, the commission may, for the benefit and welfare of the rural and suburban areas of the county, prepare and submit to the board of county commissioners drafts of ordinances for the purpose of carrying out the master plan or of any part thereof, *including zoning or land use regulations, the making of official maps and the preservation of integrity thereof,* and including procedure for appeals from decisions made under the authority of such ordinances, and regulations for the conservation of the natural resources of the county, and the board of county commissioners is hereby authorized and empowered to adopt such ordinances." (Our italics.)

It is reasonable to assume that the Legislature in passing this act took cognizance of the well-known fact that rural areas, adjacent to cities, were rapidly developing as community centers. Tracts of land were being platted into divisions and subdivisions for the purposes of meeting the demand of many urban inhabitants to move to and live in a less congested community. This movement from the thickly populated areas of our cities to the suburban districts created problems somewhat akin to the city problems such as sanitation, sewage disposal, plumbing,

regulation of buildings and businesses of various kinds. This is specifically set forth in Section 9, *supra*. It is provided in said section that the commission may submit to the board of county commissioners drafts of ordinances that in their judgment would be for the benefit and well being of the rural and suburban areas including *zoning* and *land use regulations*. This necessarily implied power on the part of the board of commissioners to pass and adopt ordinances of this nature. It will be noted that the ordinance here in question is made to govern and to apply only to the erection of structures and buildings on lots of recorded subdivisions and tracts of land of 2 acres or less lying outside the city limits. We conceive of no reason why the Legislature cannot confer power upon boards of county commissioners to regulate the construction, repair, and alteration of buildings in suburban areas and to confer upon them the power to zone and regulate building activity in such areas. This is not disputed by appellee. We think the appellee is in error in his contention that the statute here in question does not confer such power upon the board of county commissioners. There is no contention upon the part of appellee that the ordinance is invalid for any reason except that the statute, as he interprets it, confers no authority either expressed or implied to pass such an ordinance. As pointed out above, we are of the opinion that the statute is broad enough to authorize the board of commissioners to adopt such ordinance for building regulations and to provide for a reasonable fee to be paid for building and inspection permits. Having concluded that the appeal was properly perfected and that this court has jurisdiction and that the ordinance is not invalid for the reasons urged, we conclude that the judgment below should be reversed. Inasmuch as

all of the evidence is without conflict, a new trial is unnecessary. It is therefore ordered that the judgment of the trial court be reversed and set aside and judgment entered in favor of appellant.

NOTE.—Reported in 30 N. E. (2d) 713, 131 A. L. R. 1048.